SMITH *v.* HOPF.

4-9489　　　　　　　　　　　　　　240 S. W. 2d 2

Opinion delivered June 11, 1951.

*Shelby R. Blackmon* and *J. Fred Jones,* for appellant.

*Ben M. McCray,* for appellee.

GRIFFIN SMITH, Chief Justice.   W. L. Duncan does business as Duncan Lumber Company.   He operates a sawmill and ordinarily buys logs delivered on the yard. W. A. Smith buys and sells timber and is sometimes financed by Duncan.   Each denies a partnership or an agency by Smith.   The questions are (a) whether a tract of timber purchased by Smith from Rosie Hopf was for the mutual benefit of Smith and Duncan; (b) whether Smith purchased for himself alone; or, (c) whether, in the alternative, Smith, in purchasing with Duncan's money, deceived Mrs. Hopf to her damage in circumstances justifying a prudent person in believing that he and Duncan were conducting a joint enterprise.

It is undisputed that Smith entered into a verbal agreement with Mrs. Hopf in 1948 for timber on a designated tract and paid with Duncan's check written in Mrs. Hopf's favor, with the indorsement: "For all standing pine timber on the E½ NE SW 6-25-12—20 acres, with six months to remove same and free access to land for removal."

Mrs. Hopf and those in interest with her contend that she agreed to sell all of the standing pine measuring eight inches, and that Smith at the time the accord was reached told her he was acting for Duncan.   This is denied by Smith, and Duncan testified that he made an advance to Smith, but intended the indorsement to evidence his security for a loan.   He had often bought from Smith, but Smith was not under obligations to sell him timber from any particular tract, and his interest in the Hopf transaction did not go beyond recoupment.

Mrs. Hopf and a witness who says he overheard essentials of conversations when the purchase was completed, testified that when the check was presented objection was made that nothing appeared in writing to show that the timber sold was not to be under eight inches, but Smith emphatically assured the seller that the limitation was thoroughly understood and it would not be necessary to verify that fact.   Believing this declaration to be sufficient, Mrs. Hopf took the check.

Frank Rhodes, representing International Paper Company, testified that he paid Smith $200 for pulpwood taken from the Hopf property. Smith told him he was connected with Duncan, but did not elaborate in a manner disclosing what the relationship was. In return for the $200 International was to get all of the pine timber, to be removed within five months. The agreement was made in November, 1948. In supervising removal Rhodes observed that in some places timber under eight inches had been cut, and in taking what Smith had left, some "tops" were worked up, and the smaller growth was included. Smith told him that "they" [meaning Duncan and Smith] were owners of all of the timber, irrespective of size. About a third of the timber taken by International was "tops", the remainder having been cut from standing pine. Ordinarily nothing smaller than five inches is used—four inches at the little end. It was Rhodes' intention not to take anything under five inches at the butt.

Treating International's payment to Smith as evidence that the undersize timber sold by Smith and Duncan was worth $200, Mrs. Hopf sued for treble damages, and for $900 representing permanent damage to the land. The jury's verdict was for $600.

A great deal of improper evidence was admitted, but it does not appear to have been objected to. Some of the testimony relied on by appellees to prove Smith's agency was clearly incompetent under the rule that the declarations of an agent made to a third person in the absence of the so-called principal, which were not brought to the principal's knowledge or ratified by him, should not be used to prove the fact of agency, although circumstantial evidence may be sufficient. *Bell* v. *State,* 93 Ark. 600, 125 S. W. 1020.

Appellants' first assignment is that Instruction No. 3, given at plaintiffs' request, was inherently prejudicial because it referred to the check as having been in payment "of timber purchased by the defendants". This was a binding instruction because it closed with the alternative direction, "then the defendants would be liable to the

plaintiffs''. It assumes as a matter of law that two defendants made the purchase, and was therefore inferential comment on the evidence. The motion for a new trial did not assign this instruction as error, hence we cannot consider it.

Instruction No. 5 deals with the measure of damage. It was objected to generally, and the objection is brought forward in the motion for a new trial. Like No. 3, it is binding. It told the jury that if it should find that the defendants actually purchased ''only the timber above eight inches in diameter, and that they or either of them subsequently wilfully and without authority sold the timber on said lands, . . . and that by reason of said cutting and removing the plaintiffs were damaged, *then the defendants* are liable to the plaintiffs in three times the value of the timber so cut and removed.''

The instruction, it will be observed, first deals with the defendants ''or either of them'', and correctly permits the jury to determine whether Smith acted as Duncan's agent. It then says that if either defendant acted wrongfully, the *defendants* would be liable.

Since agency was a question of fact, the jury might have found that Smith was liable, but not Duncan, notwithstanding the *prima facie* case presented by the check.

Affirmed as to Smith; reversed as to Duncan, and remanded for a new trial.