GARRISON PROPERTIES, Inc. *v.*
BRANTON CONSTRUCTION COMPANY, Inc.

5-6071                                                486 S.W. 2d 672

Opinion delivered November 20, 1972

*Rose, Barron, Nash, Williamson, Carroll & Clay,* for appellant

*House, Holmes & Jewell,* for appellee.

Carleton Harris, Justice. Branton Construction Company, Inc., hereinafter called Branton, appellee herein, agreed to construct an asphalt parking lot and apron for a truck terminal which was being built by Garrison Properties, Inc., hereinafter called Garrison, appellant herein. The work was to be completed in 75 calendar days, and the contract provided that Branton would pay liquidated damages of $35.00 for each day it delayed completion. Work was commenced on August 19, 1968, but was not completed until June 6, 1969. Appellant began using the new terminal on June 27, 1969. A portion of the contract price was withheld by Garrison, and Branton instituted suit for the balance of the contract price and for the purpose of establishing materialman's and laborer's liens on the property. Garrison answered and counterclaimed, setting out that the con-

tract required completion within 75 calendar days from commencement of the work and provided for liquidated damages as heretofore set out. It was asserted that Branton exceeded the time period allotted for completion by 239 days and that appellant had been damaged in the amount of $8,365.00. It was further alleged that Branton had been paid the sum of $32,087.82 and that the balance had been retained as liquidated damages. Garrison asserted that Branton had not performed in accordance with the plans and specifications of the contract and that the work was defective; the cost of correcting defective work was sought. In its answer to the counterclaim, appellee denied that appellant was entitled to liquidated damages, and asserted that any delay in completion of the work was due to the orders of Mr. W. William Graham, Jr., Inc., Garrison's consulting engineer and agent; further, that any delay in completion was due to inclement weather beyond the control of the plaintiff; still further, that appellant waived the time of performance stated in the contract and waived any right to liquidated damages. It also denied that it had been paid $32,087.82 under the contract, and likewise denied that any work was defective. The case proceeded to trial before the Pulaski County Circuit Court, sitting as a jury, and at the conclusion thereof, judgment was rendered in favor of Branton in the amount of $11,578.72, in favor of Garrison on its counterclaim in the amount of $3,000, and a lien was declared on Garrison's property to secure payment on the net amount of Branton's judgment of $8,578.72. From the judgment so entered, appellant brings this appeal. For reversal, two points are asserted, first, that there was no substantial evidence to support the court's finding that $11,578.72 was due appellee on the contract, and second, that there was no substantial evidence of a waiver of appellant's right to liquidated damages for delay in completion of the work. We first discuss the second point.

We are precluded from discussing the merits of this contention because of the fact that a judgment was entered in favor of Garrison on its counterclaim, without specific findings being made as to what the judgment covered. In other words, there is no way of knowing whether the $3,000 judgment to Garrison was given on

the basis of liquidated damages or on the basis of the defective work, for no specific findings were made by the court. Appellant argues, with some degree of logic, that the $3,000 award was based on the defective work, not only because the testimony set that figure as the amount necessary to correct defects, but also because that amount of money is not anywhere close to the amount that it sought as liquidated damages (which could have run as high, under appellant's contention as $8,365.00). Accordingly, says appellant, the court found that Garrison had waived his right to liquidated damages, and this is the principal point argued on appeal. Though we might agree with appellant that under the evidence, there was no waiver of delay in completing the job, still, this was a question of fact, just as the matter of defective work was a fact question.

In treating a jury verdict in *Davis* v. *Ralston Purina Company*, 248 Ark. 1128, 455 S.W. 2d 685, we used language peculiarly applicable here, saying:

It is mathematically demonstrable that the jury's verdict for $45,349.96 is the exact sum of the first, fifth, and sixth items listed above and that the amount of the verdict cannot be arrived at by any other combination of pertinent figures in the record. Upon that premise the appellants insist that the jury necessarily found that both contracts had been breached and therefore acted arbitrarily in not awarding the plaintiffs the full amount of damages listed in the foregoing tabulation. The appellants conclude that the trial court abused its discretion in denying their motion for a new trial.

Such an argument is fully answered by our holding in *Fulbright* v. *Phipps*, 176 Ark. 356, 3 S.W. 2d 49 (1928), and similar cases. In the *Fulbright* case the suit was brought to enforce a salary claim for $10,000. Under the evidence the verdict should have been for the full $10,000 or for nothing. The jury, however, awarded the plaintiff only $5,000, which we recognized as a manifest compromise. Both parties filed motions for a new trial. We held that the trial court might properly have granted either motion if

convinced that the verdict was contrary to the preponderance of the evidence, 'or have overruled both motions for a new trial, if not so convinced.'

In *Wawak* v. *Stewart*, 247 Ark. 1093, 449 S.W. 2d 922, it was stated that under the rule of *Fulbright* v. *Phipps, supra,* the verdict need not correspond in amount to proof adduced by either party.

On appeal in a law case, we treat the holding of the trial court exactly as we would a jury verdict, and give it the same force and binding effect. In *Southern Farm Bureau Cas. Ins. Co.* v. *McGibbony,* 245 Ark. 1016, 436 S.W. 2d 824, the court was considering a judgment based upon a general finding by the circuit court, sitting without a jury. This court said:

Upon such a general finding the case stands as if a properly instructed jury had returned a verdict for the appellee. *Blass* v. *Anderson,* 57 Ark. 483, 22 S.W. 94 (1893). Hence the single question here is whether there is substantial evidence to support the trial court's finding of fact.

Appellant's other point deals with the contention that Garrison made a $3,000 payment to appellee for which it received no credit.[1] Branton submitted two requests for final payment; the first was dated June 6, 1969, and the other was dated July 23, 1969. The first request reflects that appellee had received $29,087.82, leaving an amount due of $13,681.23. This request was presented to Robert C. Lowe, Office Supervisor for Graham, and supposedly covered materials and work performed on the job. Lowe said the statement did not conform to the contract in that there was a difference in amounts and quantities, and he told Branton to submit a second estimate. This was done, being the estimate of July 23. This second request reflected that appellee had received $29,087.72, with an amount still due of $11,578.72. In the meantime, Garrison had, on June 12, sent Branton a $3,000 payment. This $3,000 payment is not reflected in the previous payments column of either the first or

---

[1]This $3,000 is not to be confused with the $3,000 at issue in the counterclaim.

second request. Branton testified that the $3,000 was for extra work, consisting mainly of excavation work and hauled in borrow fill. The witness said that this second statement was in compliance with Lowe's request, and this is correct, but Lowe testified that he did not know about the $3,000 payment when he gave Branton the amount for the substituted request for payment. The testimony of appellee is somewhat conflicting. On direct examination he testified that the final statement was prepared on the advice of Lowe, who, according to Branton, indicated that he knew about the $3,000 payment.[2] Subsequently, however, when asked if he mentioned to Lowe that he had received the $3,000 payment, the witness replied "I didn't discuss it with Mr. Lowe". Still again, when asked if Lowe knew that he had received the additional $3,000, Branton replied, "I have no way of knowing".

Other evidence is somewhat confusing. For instance, the following occurred during the examination of Branton:

Q. All right. Now, can you tell us why that [difference between first and second requests for payment] was changed from the Thirteen Thousand some odd dollars to the Eleven Thousand Five Hundred Dollars as finally submitted with permission of Mr. Lowe?

A. Between the time that these two estimates were made, we received from Mr. Graham a payment in the amount of Three Thousand Dollars.

Q. And you had not sent out a request in the

[2] From the record:

Q. All right. You had made out your final statement for Thirteen Thousand some odd hundred dollars. This was changed at the advice, you told us, of Mr. Lowe...

A. Yes.

Q. The Engineer?

A. Yes.

Q. Why was the change made? He indicated you had received the three Thousand Dollar payment?

A. Yes, the payments on his breakdown do not list the Three Thousand Dollars. He brought that breakdown to our office and told us that if we would submit this breakdown we would be paid that amount and since the amount didn't vary in a major way from the amount we billed, we accepted his instructions and submitted our estimate.

exact amount of Three Thousand Dollars?

A. No.

Q. All right. Now, was there anything that had happened, or any extra work that you did, in this interim period to which the Three Thousand Dollars was applied?

A. No.

Mr. Branton, on his final estimate, billed for 4,300 yards of unclassified excavation at 85 cents a yard, stating that the contract amount of unclassified excavation was 3,500 yards but he said, on cross-examination, that he was given credit by the engineers for additional unclassified excavation which he performed, being allowed 4,300 yards. This was submitted in the final estimate. The record then reveals the following:

Q. Any other extras?

A. The excavation and fill we made against the building.

Q. That's not included in your first one?

A. I don't. . .

Q. Isn't that included in the original estimate that you submitted?

A. Yes.

Q. It is?

A. Yes. ***

Q. Now, this one [first request] requests payment for Forty One Hundred cubic yards of excavation?

A. Yes.

Q. Does that include the extra, all the extra excavation that you had to do?

A. Yes.

Q. It does?

A. To the best of my knowledge.

Q. Including the eight foot area and all that business?

A. Yes.

It will be remembered that Branton also stated that there was no extra work done between the time of the first and second requests to which the $3,000 payment was applied. It certainly appears that Branton was given credit on his final request for payment for extra excavation which was in excess of the contract amount[3] and it does not appear that the $3,000 paid on June 12 was credited to extra work. It follows that we find no substantial evidence to support a finding that Branton gave credit to appellant for the payment of this $3,000.

In accordance with what has been said, the judgment is affirmed on the condition that remittitur is entered as indicated within 17 calendar days; otherwise the judgment will be reversed and the cause remanded for a new trial on all issues.

---

[3] As herein shown, the testimony reflected that Lowe approved the second request, and in doing so, he allowed Branton 4300 cubic yards unclassified excavation instead of the contract amount set at 3500 cubic yards.