B. J. McADAMS, INC. *v.* BEST REFRIGERATED
EXPRESS, INC., AMERICAN EQUIPMENT CO., INC.
and TEX-AM CARRIERS, INC.

78-312                                         579 S.W. 2d 608

Opinion delivered April 23, 1979
(Division II)

*Paul J. Nicholson* and *James W. Woods,* for appellant.

*Laser, Sharp, Haley, Young & Huckabay, P.A.,* for appellees.

JOHN A. FOGLEMAN, Justice. Each of the appellees, Best Refrigerated Express, Inc., American Equipment Co., Inc., and Tex-Am Carriers, Inc., filed a separate suit against appellant B. J. McAdams, Inc., seeking recovery of unpaid bills based upon trip leases of highway tractor and trailer rigs for the transportation of goods. The cases were consolidated for trial by agreement of the parties. Appellant defended on the ground that it was entitled to a set-off in the amount of $8,981.87, because that amount was owed it by American Beef Packers, Inc. Appellant contended that each of the appellees had acted as an agent for American Beef Packers, Inc., in the transactions on which the suits were based and that the leases inured to the benefit of American Beef Packers. The trial of the case to the court without a jury resulted in a judgment for each of the appellees in the amount sued for and a denial of the set-off.

Appellant's first point for reversal is the assertion that the trial court erred in failing to grant its motion for a continuance because of the absence of a material witness. Appellant admits that the granting or refusal of a continuance lies in the sound judicial discretion of the trial court, and that, on first review, it would appear that the court did not act arbitrarily or capriciously and that the weight of precedents is against its present contentions. It seeks to show abuse of discretion, however, on the basis that the defense required the establishment of the relationship of four separate entities who had dealt with appellant; that the cases were not consolidated as early as the trial judge had indicated in denying the motion; and that, although this material witness was outside the jurisdiction of the court, he had previously consented to appear, but it had become apparent to appellant only two hours before trial that he would not appear, so it was impossible for it to prepare an affidavit setting out the materiality and truth of the witness's potential testimony. Appellant further asserts that the absent witness was the "prime and possibly the only 'material' witness per se."

It certainly is not possible to sustain appellant's statement that the overall considerations in this case are such that denial of the continuance constituted a gross abuse of discretion. The oral motion by appellant's attorney was:

> Your Honor, I would like to move that this case be continued on the basis that we have located a witness who is material, who is unable to be here today and who is necessary for putting on the defendant's case.

This is the complete record on the presentation of this motion to the trial judge. It would be arbitrary for this court to hold the trial court in abuse of discretion in denying the motion based upon the absence of a witness whose identity and whereabouts have never been disclosed, without the reason for his absence, the prospects of obtaining his testimony at a later date, the facts to be shown by his testimony, or appellant's efforts to obtain his attendance at the trial ever having been revealed to the trial judge. It may well be that appellant was not afforded sufficient time for the preparation of an extensive motion or affidavit. There was nothing to prevent the critical information from having been communicated to the trial court orally. To say the least, a statement of these facts could have been proffered for the record. There was no abuse of the trial court's discretion in this respect.

Appellant's other point for reversal is that the court's denial of a set-off was not supported by sufficient evidence and was against the clear preponderance of the evidence. Of course, we are not concerned with the question of preponderance. The scope of our review is to determine whether there was any substantial evidence to support the trial judge's holding. Appellant admits that this is an established rule, but asserts that this court has held on many occasions that a trial court's judgment will be set aside when the preponderance against it is great and it appears to be clearly wrong. Appellant cited only two cases as example. Not only do they fail to support its statements, both were chancery cases in which the review is de novo.

It was the contention of appellant that each of the appellees acted as an agent for American Beef Packers, Inc., in soliciting and negotiating the "trip lease" agreements for

which these plaintiffs sought compensation in their separate actions, and that, for this reason, appellant was entitled to set off the indebtedness of American Beef Packers, Inc. against claims asserted in the suits brought by these agents in their own names. We need not pursue that question, because, assuming that appellant is correct, we find adequate evidentiary support for the judgment.

Appellant admits that there is no direct evidence of agency, but asserts that circumstances, such as the relationship of the parties, their conduct in reference to the subject matter of the contract, and previous instances of the alleged principal's treatment of each of the purported agents as an agent constitute proof of agency. It must be remembered, however, that appellant bore the burden of proving agency. *Bell* v. *State*, 93 Ark. 600, 125 S.W. 1020. We also held in *Bell* that agency could be proved by circumstantial evidence, if the facts and circumstances introduced in evidence are sufficient to induce in the minds of the jury the belief that the relation did exist and that the agent was acting for the principal in the transaction involved. Obviously, the evidence did not induce that belief in the mind of the fact-finder here. Appellant seizes upon a statement of the trial judge at the conclusion of the trial that "we have absolutely no evidence in this record that would be considered substantial that would cause the court to make a finding that American Beef Packers had any connection or control over the leased equipment," and argues that it was erroneous. We do not take this statement to mean that there was no evidence tending to establish agency. We do take it to mean that appellant had not met its burden of proof of agency when the test of circumstantial evidence was applied.

The normal practice in transactions of the sort involved here was established by the evidence. The lessor of tractor-trailer rigs for transportation of goods on the highways (appellees in this case) contacts the dispatcher of the lessee (appellant in this case) and negotiates a "trip lease" of equipment owned by the lessor, for one trip only. The dispatcher for the lessee records information given him by the lessor's dispatcher to be used in the preparation of the lease. The lessee's dispatcher prepares a lease from this information and

mails it to the driver of the truck which is the subject of the lease, for signature by the driver.

Appellant's dispatcher testified that he prepared the leases in question. He said that it was customary for the dispatcher or driver to take the copy of the vehicle registration and "copy down who the vehicle was registered to" and the "registration of the tractor and trailer numbers, the serial identification numbers and the respective states the trucks were licensed in." He said that this was done to ascertain the name of the true owner.

Appellant then argues that the agency was established by the leases on which the suits were brought. There were 17 leases in all. Appellant was the lessee in all of them. In one, American Beef Packers was named as lessor. The lease was signed by Marc Robinson on January 20, 1975, for American Beef Packers as lessor. Robinson was a truck driver. Another lease, dated February 7, 1975, showed American Beef Packers as lessor, but no one signed for the lessor. Douglas E. Harkalis, a truck driver, signed a certification as to the time he had previously been on duty and as to his familiarity with the safety regulations of the Interstate Commerce Commission. A third lease was signed by Dennis Buss for American Beef Packers as lessor on February 3, 1975. Still another was signed by Richard Sloat on January 25, 1975. This lease showed American Beef Packers as lessor in the introductory clause, but the signature line did not identify the lessor. These four leases were all prepared by Randy Day, appellant's dispatcher.

Frank Myers, who testified for appellees, stated that he was closely associated with, and familiar with, the operations of all the appellees in the latter part of 1974 and the first part of 1975. When he testified, he was traffic and sales manager for Best Refrigerated Express, Inc. He stated that he had been employed by American Equipment Company for 14 months beginning on July 11, 1977, and by Tex-Am Carriers in 1976 for approximately one year. He stated that he had been an employee of American Beef Packers for approximately five years, prior to January 11, 1975. He testified that the drivers who signed these leases were employees of American Equipment Company at the time they signed, although they

had previously been employees of American Beef Packers. All of these trip leases were entered into subsequent to January 11, 1974, when American Beef Packers filed a petition in bankruptcy. Myers testified that, after that date, there was no relationship between American Beef Packers and American Equipment Company, but that prior to that time, American Equipment Company had leased equipment to American Beef Packers. Myers stated that all of the four leases mentioned above had been negotiated by American Equipment Company and prepared by employees or agents of appellant. He said that all of the equipment listed in those leases belonged to American Equipment Company. He testified that putting the name of American Beef Packers on the leases was an error on the part of the preparer, and implied that it was done deliberately, with a set-off in view. He also testified that, although Tex-Am Carriers was no longer in business, it had been a contract carrier for American Beef Packers, as an independent contractor and that American Beef Packers had no control over it. According to Myers, there was only a shipper-carrier relationship between American Beef Packers and Best Refrigerated Express, a common carrier.

Robert E. Lee, vice-president of American Beef Packers in charge of production and cattle procurement since 1972, and a member of its board of directors from 1969 until its bankruptcy, testified that he was familiar with parent companies and subsidiaries of American Beef Packers and was familiar with Best Refrigerated Express, Inc. and American Equipment Company, but not Tex-Am Carriers. He testified that none of them were owned by, subsidiaries of, or agents of, American Beef Packers, that the only relationship between American Beef and appellees was a normal shipper-carrier relationship, and that none of them were authorized to represent themselves as a subsidiary or agent of American Beef Packers. He also said that the traffic manager of American Beef Packers had no such authority. He had no recollection of either the name Bob Badboys or Bob Stout.

William D. Shipley, operations manager of appellant, testified that he "checked out" the three appellees by talking with a man named Bob Gadforth. He believed Gadforth was traffic manager at the American Beef Packers' "location" at Dumas, Texas.

Appellant argues that the evidence showed that appellees were representing themselves as agents of American Beef Packers, Inc. and that American Beef Packers was notified of these representations and ratified them by silence. There are obstacles to the acceptance of this testimony as establishing the alleged agency. One of them is the fact that, even though the statements and actions of an alleged agent may be admissible to corroborate other evidence tending to establish agency, neither agency nor the scope of agency can be established by declarations or actions of the purported agent. *Mark* v. *Maberry*, 222 Ark. 357, 260 S.W. 2d 455; *Zullo* v. *Alcoatings, Inc.*, 237 Ark. 511, 374 S.W. 2d 188; *Smith* v. *Hopf*, 219 Ark. 127; 240 S.W. 2d 2. Another obstacle is the fact that the evidence appellant relies upon to show ratification is far from satisfactory. Shipley expressed a belief that Bob Gadforth was the gentleman he talked with at American Beef Packers. When asked what American Beef Packers said about the two carriers who had approached him, he said that Gadforth "advised us they had referred us to American Beef Packers whenever we talked to them or whenever I talked to them," and that he believed Gadforth to be the traffic manager at the American Beef Packers' "location." Gadforth was not otherwise identified. His authority or connection with American Beef Packers was not shown.

On appellate review, all the evidence must be viewed, with every reasonable inference derived therefrom, in the light most favorable to appellees. *Zullo* v. *Alcoatings, Inc.*, supra. When the evidence is circumstantial only, it is always very difficult to say that a finding adverse to the party offering it to prove a fact is erroneous, because a fact may be shown by circumstantial evidence when the circumstances are such that reasonable minds might draw different conclusions. *Woodward* v. *Blythe*, 246 Ark. 791, 439 S.W. 2d 919; *Myers* v. *Hobbs*, 195 Ark. 1026, 115 S.W. 2d 880; *Arkmo Lumber Co.* v. *Luckett*, 201 Ark. 140; 143 S.W. 2d 1107. Thus, when all reasonable inferences are drawn favorably to the finding of fact and the evidence is viewed in the light most favorable to that finding, it can hardly be said a reasonable mind could not reach the conclusion reached by the fact-finder.

It is only where there is no substantial evidence to support a verdict, where fair-minded men can only draw a con-

trary conclusion or where there is no reasonable probability that an incident involved occurred according to the version of the prevailing party, that a jury verdict will be disturbed. *Blissett* v. *Frisby*, 249 Ark. 235, 458 S.W. 2d 735. The judgment of a court sitting without a jury has the same binding force and effect on appeal as a jury verdict, even when the fact-finding consists only of drawing inferences and conclusions from the evidence. *Garrison Properties, Inc.* v. *Branton Construction Co.*, 253 Ark. 441; 486 S.W. 2d 672; *Mid-South Ins. Co.* v. *Dellinger*, 239 Ark. 169, 388 S.W. 2d 6; *Cox* v. *State Farm Fire & Casualty Co.*, 240 Ark. 60, 398 S.W. 2d 60, 17 ALR 3d 1376. There was direct evidence that there was no agency. We cannot say that the finding that appellant had failed to meet its burden of proof was erroneous.

The judgment is affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.