Rick TAYLOR, Joyce Taylor and Kenny Willis *v.* Jackie GILL

96-793                                         934 S.W.2d 919

Supreme Court of Arkansas
Opinion delivered December 23, 1996

*Matthews, Sanders, & Sayes*, by: *Margaret M. Newton* and *Mel Sayes*, for appellants.

*Green, Henry, & Green*, by: *J. W. Green, Jr.*, for appellee.

ROBERT L. BROWN, Justice. Appellants Rick Taylor and Joyce Taylor appeal from a $40,000 judgment entered against them relating to a lawnmower injury sustained by appellee Jackie Gill. The Taylors raise several arguments for reversal, one of which is the lack of an agency relationship between them and the operator of the lawnmower, Kenny Willis.[1] We agree with the Taylors that Willis was not acting as their agent when the injury occurred, and we reverse the judgment as it pertains to them.

Kenny Willis and the Taylors lived in the same neighborhood in Stuttgart and were friends who would, on occasion, assist each other in meeting various needs. For example, Rick Taylor would help Willis with mechanical work on his truck, while Willis would mow the Taylors' yard because the Taylors did not own a lawnmower. Other neighbors, including Jackie Gill, would do the same. No payment was made for these services, and Willis was not paid for the mowing involved in this case.

---

[1] Though the style of the case includes Kenny Willis as an appellant, he did not appeal.

On April 16, 1994, a day when Rick Taylor was out of town, Willis began mowing the Taylors' yard. He was neither asked nor told to do so but was merely mowing the yard as a favor to the Taylors. Both Rick and Joyce Taylor later testified at trial that they did not know Willis would be mowing their yard on that day. Although neither of the Taylors was home when Willis commenced his task, Joyce Taylor returned from work while he was cutting the grass in her yard. She noticed that Willis was doing this but did not ask him to stop, although she acknowledged at trial that she could have done so. While Willis was mowing in a ditch on the Taylors' property, the lawnmower hit a rock or piece of gravel which shot out from the side of the lawnmower, soared some 20 feet, and struck Jackie Gill, who was standing on the other side of a pickup truck, in the eye. Gill lost partial use of his eye.

Gill filed a complaint against Kenny Willis and the Taylors and sought damages for the personal injury he sustained as a result of Willis's alleged negligence. The complaint asserted that Willis, acting as the Taylors' agent, operated the lawnmower unsafely in an area where gravel and rocks were located without first determining whether it could be done without causing injury to Gill.

At the ensuing trial, the Taylors moved for a directed verdict at the close of Gill's evidence and urged, among other things, the lack of substantial evidence to support an agency relationship. The directed-verdict motion was denied. The Taylors put on no proof, and the circuit court submitted the case to the jury on interrogatories. The jury found that Willis was 80% at fault, while Gill was 20% at fault. The jury assessed Gill's damages at $50,000 and found that an agency relationship existed between Willis and the Taylors. The court, as a result of the verdict, reduced the $50,000 award due to Gill's measure of fault and entered a $40,000 joint and several judgment against the Taylors and Willis.

In *Pledger* v. *Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994), we set forth the principles of agency law followed in this state:

> The burden of proving an agency relationship lies with the party asserting its existence. *B.J. McAdams, Inc.* v. *Best Refrigerated Express, Inc.*, 265 Ark. 519, 579 S.W.2d 608 (1979). This court has used different definitions of agency that were appropriate for the particular cases, but each of

them includes the element of control by the principal. In *Evans v. White*, 284 Ark. 376, 682 S.W.2d 733 (1985) and *Campbell v. [Bastian]*, 236 Ark. 205, 365 S.W.2d [249] (196[3]), we adopted the definition of agency contained in the Restatement (Second) of Agency. We said the two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control. In *Hinson v. Culberson-Stowers Chevrolet, Inc.*, 244 Ark. 853, 427 S.W.2d 539 (1968), we examined the Restatement definition together with a quote from 2 Am. Jur. 13, Agency § 2 and concluded that the essential elements for a showing of the agency relationship were authorization and control. *Id.* at 855, 427 S.W.2d at 541-42.

*Pledger*, 316 Ark. at 200, 871 S.W.2d at 392.

■ Prior to the *Troll Book Clubs* case, this court observed that a gratuitous undertaking could fall under the umbrella of an agency arrangement:

An agency may be defined as a contract, either express or implied, upon a consideration, *or a gratuitous undertaking*, by which one of the parties confides to the other the management of some business to be transacted in his name or on his account, and by which that other assumes to do the business and render an account of it.

*Hinson v. Culberson-Stowers Chevrolet, Inc.*, 244 Ark. 853, 855, 427 S.W.2d 539, 541-42 (1968) (quoting 2 Am. Jur. 2d § 2, at 13) (emphasis added). *See also Campbell v. Bastian*, 236 Ark. 205, 365 S.W.2d 249 (1963).

■ Recently, we cited the Restatement (Second) of Agency § 221, cmt. c (1957), to the effect that it is only necessary that there be submission by the one giving the service to the direction and control of the one receiving it as to the manner of performance. *See Howard v. Dallas Morning News, Inc.*, 324 Ark. 91, 918 S.W.2d 178 (1996). This principle of law applies not only to a master-servant arrangement but to principal-agent relationships as well.

■ Our standard of review in determining whether the trial court erred in denying a motion for a directed verdict is whether the verdict of the jury is supported by substantial evidence. *Barnes,*

*Quinn, Flake & Anderson, Inc.* v. *Rankins,* 312 Ark. 240, 848 S.W.2d 924 (1993); *Young* v. *Johnson,* 311 Ark. 551, 845 S.W.2d 510 (1993). Substantial evidence is that evidence which is beyond mere suspicion or conjecture and which is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion of the matter one way or another. *Anslemo* v. *Tuck,* 325 Ark. 211, 924 S.W.2d 798 (1996); *Muskogee Bridge Co.* v. *Stansell,* 311 Ark. 113, 842 S.W.2d 15 (1992). In our review, we will only consider evidence favorable to the appellee together with all its reasonable inferences. *Anslemo* v. *Tuck, supra; Muskogee Bridge Co.* v. *Stansell, supra.*

Thus, focusing on the evidence most favorable to Gill, it is clear that the Taylors, who did not own a lawnmower, were benefited by the services provided by Willis. Furthermore, they did not reject Willis's work on prior occasions; nor did they do so in this case despite the fact that Joyce Taylor returned home while he was cutting the grass and had the opportunity and authority to stop the work as the homeowner. Based on these facts, and the inference that Rick Taylor and Willis were exchanging favors, Gill urges that there is substantial evidence that Willis was acting as the Taylors' agent when the injury occurred.

The Taylors concede that under Arkansas law an agency may be implied from the conduct of the parties even absent an express agreement. *See Hinson* v. *Culberson-Stowers Chevrolet, supra.* They further concede that they were receiving a benefit from the mowing services provided by Willis. But they maintain that there was a dearth of proof on (1) mutual consent to the agency relationship, even by implication; (2) the ability of the Taylors to control the conduct of Kenny Willis; and (3) Willis's submission to that control. We agree.

Although no evidence was presented that Willis was asked to cut the Taylors' grass on this particular day, a jury could reasonably conclude, based on the prior conduct of the parties, that Willis had authority to do this work. However, as our Model Jury Instruction points out, an agent is "a person who, by agreement with another called the principal, acts for the principal and is *subject to his control.*" AMI 3d 701 (emphasis added). *See also Crouch* v. *Twin City Transit, Inc.,* 245 Ark. 778, 434 S.W.2d 816 (1968); *Campbell* v. *Bastian, supra.* The only evidence tending to establish a right of control in the Taylors over the work performed by Willis comes from the

following colloquy between Gill's counsel and Joyce Taylor on direct examination:

GILL'S COUNSEL: If Mr. Willis had been doing something that you did not approve of when you drove up on April sixteenth in mowing your yard, would you have told him to do it differently?

JOYCE TAYLOR: Yes, sir.

GILL'S COUNSEL: Being your yard, you had control?

JOYCE TAYLOR: Yes, sir.

We view this colloquy in the context in which the service was performed — as an unsolicited favor to the Taylors. Giving this evidence its most probative value, it proves only that the Taylors could have prevented Willis from mowing because of their status as property owners. For example, had Joyce Taylor observed Kenny Willis mowing in an off-limits area like a flower bed, or at a time when the lawnmower's noise was distracting, she could have stopped him. That authority, however, does not meet the requirement, as noted in *Evans* v. *White, supra,* and *Campbell* v. *Bastian, supra,* of proving an express or implied agreement between Willis and the Taylors that Willis was subjecting himself to the control of the Taylors with respect to the methods employed in mowing the yard. Moreover, apart from the fact that Willis was working on the Taylors' property, there was no evidence presented at trial of the intent or authority of the Taylors to control the precise manner in which Willis mowed the lawn. Again, the proof presented tended to prove only that the Taylors could force Willis to refrain from certain conduct because of their status as property owners, a condition that would apply to any third party entering the land of another to perform a service.

■ We think the evidence presented in this case does no more than relegate Willis to a status akin to that of an independent contractor, which we distinguished from an agent in *Howard* v. *Dallas Morning News, Inc., supra:*

> On the other hand, we have defined an independent contractor as one who, exercising an independent employment, contracts to do work according to his own methods and without being subject to the control of the employer, except as to the results of the work, and have held that the right to control and not the actual control determines

whether one is a servant or an independent contractor. *Wilson v. Davison*, 197 Ark. 99, 122 S.W.2d 539 (1938).

*Howard*, 324 Ark. at 100, 918 S.W.2d at 183.

In sum, we see a marked difference between the authority of Joyce Taylor to stop Willis from doing the work altogether, which she most certainly could have done, and her authority to control the exact manner in which Willis went about his task. We observe no proof that the Taylors intended to micromanage, or could have micromanaged, how Willis actually accomplished his work. Nor do we glean from the record that Willis would have subjected himself to such control in performing this favor.

■ Because there was no substantial evidence regarding the existence of the agency relationship, the judgment of the trial court must be reversed as to the Taylors. We remand for an order consistent with this opinion.

Reversed and remanded.