# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1615

_____

In re: Charles Ray Francis; Rhonda Kay Francis

*Debtor*s

-------------------------------

Ocwen Loan Servicing LLC

*Plaintiff - Appellant*

v.

Summit Bank, N.A., et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: December 20, 2013
Filed: April 25, 2014

_____

Before WOLLMAN, LOKEN, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

GMAC Mortgage Corporation, the predecessor in interest of appellant Ocwen Loan Servicing LLC, refinanced a first mortgage loan on a home and surrounding twenty two acres of land owned by Ray and Rhonda Francis. In preparing a mortgage securing GMAC's loan, its agents described an adjacent eleven acres as the mortgaged property and filed the flawed mortgage in the recorder's office. See Ark. Code Ann. § 18-40-102. Ray Francis brought this error to GMAC's attention, but GMAC failed to correct it. Some months later, appellees Summit Bank, N.A., and Southern State Bank (later renamed Farmers Bank & Trust) made additional loans to the Francises secured by recorded mortgages on portions of the twenty-two-acre parcel. The Francises filed for Chapter 7 bankruptcy protection in November 2007. GMAC filed this adversary proceeding, claiming it is entitled to a first-priority lien by operation of the Arkansas doctrine of equitable subrogation, or to reformation correcting the mutual mistake in its mortgage. The district court[1] denied both forms of relief. Ocwen appeals the denial of equitable subrogation. We affirm.

**I.**

Southern State made the first mortgage loan on the twenty-two-acre property in Hot Spring County, Arkansas. The Francises refinanced the loan in October 2005. GMAC agreed to pay off the Southern State loan in exchange for a note and a first-priority mortgage on the property. In preparing the mortgage documents, GMAC hired an independent company to prepare title reports, identifying the land by street

---

[1]The Honorable Ben Barry, United States Bankruptcy Judge for the Western District of Arkansas, determined that the proceeding was related to the Francises' Chapter 7 bankruptcy case but was not a core proceeding. See 28 U.S.C. § 157(c)(1); Stern v. Marshall, 131 S. Ct. 2594, 2603-04 (2011). Uncertain whether the parties consented to entry of a final order, Judge Barry held a one-day trial and issued proposed findings of fact and conclusions of law to the Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, who adopted in part Judge Barry's proposed findings and conclusions. See § 157(c)(1), (2).

address. The title reports mistakenly described by metes and bounds an adjacent eleven-acre plot previously sold by the Francises' company, Francis Construction Corporation. GMAC incorporated that description in the mortgage documents. Ray Francis, a former Hot Spring County tax assessor, noticed the smaller acreage when a notary brought him the mortgage documents to sign. The notary knew nothing about it. The mortgage was signed and filed in that mistaken form. GMAC's loan proceeds repaid Southern State, which then recorded a satisfaction of its first mortgage. See Ark. Code Ann. § 18-40-104.

At trial, Ray Francis testified that he later realized the documents described his neighbor's land and attempted to bring the error to GMAC's attention. When GMAC did not respond, Francis commissioned a survey that divided the land into 10.5- and 11.5-acre parcels ("Parcel A" and "Parcel B"), so that correct mortgage documents could be prepared. GMAC advised that it only worked from tax parcel numbers. Francis then obtained new tax parcel cards from the county tax assessor, but GMAC still did not modify the loan and mortgage documents. The bankruptcy court found "that the debtor's testimony at trial regarding his communication with GMAC was credible." Like the district court, we defer to this finding. See In re Quality Processing, Inc., 9 F.3d 1360, 1364 (8th Cir. 1993).

In February 2006, the Francises mortgaged Parcel A to Summit Bank to secure a new loan. Ray Francis told Summit that he intended to grant GMAC a first mortgage on the entire twenty-two-acre property, but GMAC had not corrected its flawed mortgage. Summit's loan officer initially assumed that Summit obtained a second mortgage lien on Parcel A. The Francises requested an extension of the loan's maturity in April 2007. In reviewing the mortgage documents, Summit noted that its title insurance policy showed a GMAC lien "on another parcel of property." Summit therefore concluded that it held a first mortgage on Parcel A and extended the loan's maturity in May 2007 and again in May 2009.

Later in 2007, the Francises mortgaged all twenty two acres to Southern State to secure two additional loans, first, a mortgage on Parcel A in October 2007, and the following month, a mortgage on Parcel B to refinance another loan. The Francises told Southern State that GMAC had no apparent intent to correct its flawed mortgage. Southern State concluded that GMAC had no mortgage lien on the property; therefore, Southern State would have a first mortgage lien on Parcel B, and its lien on Parcel A would be second to the lien of Summit.

**II.**

Under Arkansas law, "subrogation is an equitable remedy that rests upon principles of unjust enrichment and attempts to accomplish complete and perfect justice among the parties." St. Paul Fire & Marine Ins. Co. v. Murray Guard, Inc., 37 S.W.3d 180, 183 (Ark. 2001). Equitable subrogation, which arises by operation of law, "is broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which that other party should have paid." Id.

Ocwen argues it is entitled to equitable subrogation because GMAC satisfied the prior first mortgage of Southern State in a transaction in which the Francises intended GMAC to have a first mortgage lien. This is a claim of equitable subrogation in a well-known context. The doctrine applies when a lender advances money to pay off an incumbrance on realty at the request of the landowner with the understanding that the advance will be secured by a first lien on the property; "in the event the new security is, for any reason, not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior [lienholder], and to this end equity will set aside a cancellation of such security, and revive the same." Newberry v. Scruggs, 986 S.W.2d 853, 857-58 (Ark. 1999) (quotation omitted). As a leading treatise explains:

> In this setting the subrogee [the new lender, here, GMAC] wants more than a lien; he or she wants a lien with the priority of the original mortgage, and this is precisely what subrogation gives. The holders of intervening interests can hardly complain about this result, for they are no worse off than before the senior obligation was discharged.

Restatement (Third) of Property: Mortgages § 7.6 cmt. a (1997). But equity will only intercede "provided it can be done without working hardship or injustice to innocent parties." Wooster v. Cavender, 15 S.W. 192, 192 (Ark. 1891). The fundamental purpose of the doctrine is "the doing of complete and perfect justice between the parties without regard to form." Newberry, 986 S.W.2d at 857.

The situation in this case is unlike the facts in these prior Arkansas cases. The Francises did intend that GMAC have a first mortgage lien on the twenty-two-acre property after satisfying Southern State's prior first mortgage. But GMAC did not end up with a "new security" that was "not a first lien on the property." Newberry, 986 S.W.2d at 857. It ended up with *no* security by reason of *its own* negligence in preparing and filing a new mortgage that described other property. Of even greater importance, the liens of Summit and Southern State that Ocwen now seeks to subordinate through equitable subrogation *did not exist* when the prior Southern State first mortgage was satisfied using GMAC's loan proceeds. Summit and Southern State are not holders of "intervening interests" who took their mortgages with full knowledge of Southern State's prior recorded, unsatisfied first mortgage. They are *subsequent* creditors who extended secured loans when Southern State's first mortgage had been satisfied and GMAC had no recorded lien on the property. Thus, Summit and Southern State would have every reason to complain about the fairness of allowing Ocwen to step into the shoes of a revived Southern State first mortgage through equitable subrogation. This is not doing justice "without working hardship or injustice to innocent parties," as the doctrine requires.

Ocwen responds that it should nonetheless be equitably subrogated to the prior Southern State first mortgage because subsequent lienholders Summit and Southern State "had actual knowledge of the mistake." They rely on the principle of Arkansas law that an unrecorded deed is not valid against a subsequent purchaser of the real estate "unless that purchaser has actual notice of the prior interest," that is, notice of facts that "would put a person of ordinary intelligence and prudence on such inquiry that, if diligently pursued, would lead to knowledge of these prior interests." Killam v. Tex. Oil & Gas Corp., 798 S.W.2d 419, 422 (Ark. 1990); see Ark. Code Ann. § 14-15-404(b). Without question, the trial record reflects that Summit and Southern State "had actual knowledge of [GMAC's] mistake." Ray Francis explained the situation to them. But we reject this contention for three distinct reasons.

First, we agree with the district court that "equity will not intervene, where there are equal equities or where there are no equities." At the time Summit and Southern State made their new loans, knowledge that GMAC made a mistake by describing the wrong property on its earlier mortgage was not knowledge that GMAC had or even claimed to have a superior unrecorded interest, because GMAC had for many months made no attempt to correct the known error, or to reform its mortgage.

Second, we doubt that the principle in Killam applies in mortgage priority disputes. By statute in Arkansas, "[e]very mortgage of real estate shall be a lien on the mortgaged property from the time it is filed in the recorder's office for record, *and not before*." Ark. Code Ann. § 18-40-102 (emphasis added). In McLain v. Jordan, 298 S.W. 10, 11 (Ark. 1927), the Court held that a mortgage filed for record "was a superior and prior lien" to an earlier mortgage that described the wrong property and was not reformed until later that year. In Drew County Bank & Trust Co. v. Sorben, 28 S.W.2d 730, 731 (Ark. 1930), the Court held that a defective earlier mortgage "constituted no notice to third parties of the existence of the mortgage." Therefore, a later mortgage had priority so far as the mortgages covered the same real estate.

However, the later mortgage failed to describe 40 of the 120 acres it intended to include. As to these 40 acres:

> [the mortgagee] gained no priority of lien over [the earlier mortgagees] by reason of recording its mortgage. It had no mortgage lien on said 40-acre tract and obtained none by recording its mortgage. . . . *Even a reformation of [the later] mortgage would not relate back to the date same was recorded so as to bind or affect third parties.*

Id. (emphasis added). These cases reflect the basic purpose of mortgage recording statutes -- to create a regime that allows secured lenders to extend credit confident that only properly recorded liens will have priority over their liens. Taking away the lien priority of a secured lender because it was aware of facts that would have caused a prudent lender to investigate whether another lender's unrecorded lien had greater priority would seriously destabilize the mortgage lending market.

Third, as the district court recognized, the blame for the uncertainty regarding GMAC's lien position lies with GMAC. GMAC agents prepared the flawed mortgage documents. After the transaction, Ray Francis urged GMAC to correct the error to protect its lien position. GMAC did not heed this warning, correct the legal description, and perfect a first lien on the property before Summit and Southern State recorded mortgages securing new loans. In refinancing the Francises, both Summit and Southern State were told their lien priority was the result of GMAC's error, and that GMAC, alerted to the mistake, did nothing to correct it. Had GMAC taken timely action, it would have held the senior recorded lien, leaving no need for this attempt to stretch the doctrine of equitable subrogation beyond its established bounds. "[T]he party seeking subrogation must be without fault." Troyer v. Bank of De Queen, 281 S.W. 14, 16 (Ark. 1926).

For these reasons, the judgment of the district court is affirmed.

_____