David ANTHES and Edward Anthes *v.* Edward
THOMPSON, et al.

CA 88-176                                    773 S.W.2d 846

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1989
[Rehearing denied August 16, 1989.]

*Larry E. Graddy*, for appellant.

*Clark & Adkisson*, for cross-appellant Hendrix College.

*Laws, Swain & Murdoch, P.A.*, for appellee Jack Hill.

*Hicks & Madden*, by: *Stuart W. Hankins* and *Sherry S. Means*, for appellee James W. Bryan.

MELVIN MAYFIELD, Judge. The appellants, David and Edward Anthes, appeal from a judgment entered in a foreclosure suit which they filed against the appellees.

In 1960, appellants' parents, Paul and Ludie Anthes, leased a tract of land in Conway, Arkansas, from Hendrix College and built the Townhouse Motel and Restaurant on it. In 1975, with the written permission of Hendrix College, the Antheses assigned the lease to their sons (the appellants) David and Edward Anthes.

On March 17, 1977, appellants sold the motel and restaurant and assigned their interest in the lease to the Thompsons, who signed a promissory note for $165,000.00, payable to appellants and secured by the improvements on the property. On August 1, 1985, the balance due on this note was $90,564.60.

On August 30, 1977, the Thompsons sold to Charles E. Palmer and his wife, Virginia Palmer; on May 30, 1978, the Palmers sold to Thomas E. Huggett and his wife, Leslie K. Huggett; on November 2, 1979, the Huggetts sold to Roderick V. Spencer; on November 21, 1979, Spencer sold to Mahesh N. Kapadia and his wife, Mamta M. Kapadia; on January 13, 1981, the Kapadias sold to Bhanwan Pema and his wife, Savitaben Kana; on June 8, 1982, Pema and Kana sold to Jack Hill and James Bryan; on November 11, 1982, Hill and Bryan sold to Raymond Krayecki and his wife, Shirley Krayecki; on February 8, 1984, an order was entered in Faulkner County Circuit Court in a suit filed by Hill and Bryan against the Krayeckis which authorized Hill and Bryan to "retake possession of the property known as the Townhouse Motel and Restaurant" and assume the indebtedness due to the Antheses, the Thompsons, the Palmers and the Kapadias. In January 1985, the motel burned (Hill was later convicted of arson for burning it) but Hill continued to make payments to the appellants until August 1985.

On September 20, 1985, appellants filed this foreclosure suit

and, on October 31, 1985, Hill petitioned for bankruptcy. The bankruptcy stay was removed by order of the bankruptcy court on March 6, 1986, and the matter proceeded to trial. An amended complaint filed by appellants made all subsequent owners of the motel parties to the suit and sought judgment against them on the promissory note. Most of the subsequent owners filed cross-claims against their successors.

In the meantime, Hendrix College had a contractor demolish the remainder of the buildings and remove the debris including the concrete parking lot and swimming pool. Hendrix then intervened in this suit seeking reimbursement for the expense of restoration of the land, unpaid rent, back taxes for 1984, and treble damages for unlawful detainer pursuant to Ark. Stat. Ann. § 34-1516 (Repl. 1962) [now codified as Ark. Code Ann. § 18-60-309(b)(2) (1987)].

The court dismissed the suit against Pema and Kana and the Krayeckis holding that there had been no valid service on them. The court granted judgment for the Antheses against all subsequent owners except Hill and Bryan. The court said judgment was not granted against them because "the court has no proof before it that Hill and Bryan assumed the obligations of the previous owners who now seek to hold them liable thereon." The court also held that all who had been owners, except Hill and Bryan, and those on whom no effective service was obtained, were liable to Hendrix College for some taxes it had paid which the lessees were obligated to pay, and held all of them, including Hill and Bryan, liable for unpaid rent. The Antheses appeal the finding that there was insufficient proof in the record to show that Hill and Bryan assumed the obligations of the previous owners. Hendrix College filed a cross-appeal and argues that the court erred by not awarding it treble damages for unlawful detainer and by not assessing liability for taxes against Hill and Bryan.

On their appeal, the Antheses point out an exhibit introduced into evidence which they contend proves that Hill and Bryan agreed to assume the obligations of the previous owners. They direct our attention to Plaintiffs' Exhibit No. 8, which is a certified copy of an order, filed February 8, 1984, in Faulkner County Circuit Court in a suit brought by Hill and Bryan against the Krayeckis. Attached to the order and incorporated by

reference is a copy of the contract of sale by which Hill and Bryan sold the Townhouse Motel to the Krayeckis. The order provides in part:

2. That the plaintiffs are entitled to retake possession of the property known as the Townhouse Motel and Restaurant and plaintiffs assume the indebtness [sic] described in paragraph 1 A, B, C, D, and E of the contract of sale between the plaintiffs and the defendants dated November 4, 1982.

The specified paragraphs of the attached contract of sale provide that consideration for the sale is $450,000.00 "paid and to be paid as follows:"

(a) By Buyer assuming and discharging, according to the terms and conditions thereof, the unpaid obligation due Eddie and David Anthes pursuant to the promissory notes dated April 1, 1977, having a combined unpaid balance of $121,112.95.

(b) By Buyer assuming and discharging, according to the terms and conditions thereof, the promissory note in favor of Edward and Louise Thompson, dated July 28, 1977, and having an unpaid principal balance of approximately $71,381.26.

(c) [An obligation not involved in this case.]

(d) By Buyer assuming and discharging, according to the terms and conditions thereof, the promissory note in favor of Charles E. and Virginia Palmer, dated May 16, 1978, and having an unpaid principal balance of $78,477.28.

(e) By Buyer assuming and discharging, according to the terms and conditions thereof, the promissory note in favor of Mahesh N. Kapadia and Mamta M. Kapadia dated June 12, 1982, for $20,000.00 with a current balance of $19,403.02.

In his letter opinion, the trial judge discussed the above order as follows:

The evidence indicates that Pema and Kana returned

the motel to Hill and Bryan and that Hill and Bryan then sold it again on November 4, 1982, to Krayecki. Krayecki gave the motel back to Hill and Bryan which is evidenced by Plaintiff's Exhibit #8 which consists of an Order of the Circuit Court of Faulkner County, Arkansas, in Civil case 83-383 wherein is found a copy of the contract from Hill and Bryan to Krayecki. In the order, Hill and Bryan, as between them and Krayecki, agree to assume the obligations to Anthes, Thompson, Palmer and Kapadia. However, the requisite privity between Krayecki and Anthes, Thompson, Palmer and Kapadia is missing (as required in the cases already cited) and by the time of this document there had already been a missing link in the chain anyway.

In making this decision, the court relied on the cases of *Georgia State Savings Ass'n* v. *Dearing*, 128 Ark. 149, 193 S.W. 512 (1917); *Lesser-Goldman Cotton Co.* v. *Fletcher*, 153 Ark. 17, 239 S.W. 742 (1922); and *Carolus* v. *Arkansas Light & Power Co.*, 164 Ark. 507, 262 S.W. 330 (1924). The trial court's reasoning is explained by *Carolus*:

In *Thomas Mfg. Co.* v. *Prather*, 65 Ark. 27, we said: "This court long ago ruled, in line with the doctrine which generally obtains in this country, that, where a promise is made to one upon a sufficient consideration, for the benefit of another, the beneficiary may sue the promisor for a breach of his promise. This doctrine operates as an ·exception to the elementary rule of law that a stranger to a simple contract, from whom no consideration moves, cannot sue upon it. Therefore it should be applied cautiously, and restricted to cases coming clearly within its compass. 'There must be, first, an intent by the promisee to secure some benefit to the third party; and second, some privity between the two — the promisee and the party to be benefited — and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him, personally.' "

164 Ark. at 512-13.

■ On our *de novo* review, we cannot agree with the trial court's decision for two reasons. First, we think that privity is

established. In *Cunningham* v. *Federal Land Bank*, 192 Ark. 156, 90 S.W.2d 503 (1936), the Arkansas Supreme Court said:

> Under repeated opinions of this court we have consistently held that a grantee in a deed who expressly assumes and agrees to pay an outstanding mortgage debt against the lands conveyed by accepting such deed binds himself to the mortgagee or his assignees for the debt. This right inures to the mortgagee and his assignees as a matter of law, and no election or other affirmative action upon his part is necessary or required to establish it. *See Pfeifer* v. *W.B. Worthen Co.*, 189 Ark. 469, 74 S.W.(2d) 220, and cases cited therein.

192 Ark. at 159. The record contains a copy of a Security Agreement, introduced into evidence as Plaintiffs' Exhibit No. 6, which was executed when the appellants sold and assigned their motel and lease interest to the Thompsons. The debt secured by the Security Agreement was assumed by Hill and Bryan when they executed the contract of sale to "retake" the motel from the Krayeckis and when the order of the Faulkner County Circuit Court was entered authorizing their execution of the contract and their assumption of the outstanding mortgage debt due to the appellants. If any privity was necessary, it clearly existed between the Krayeckis (the promisee) and the appellants (the party to be benefited by Hill and Bryan's promise to pay the debt due appellants by the Krayeckis). The requirements set out by our supreme court in the *Cunningham* v. *Federal Land Bank* case are established by undisputed evidence.

In the second place, privity is not always necessary in the situation in this case. In discussing third-party beneficiaries, 4 Corbin, *Corbin on Contracts* § 788 at 108-11 (1951) states:

> Where one sells his business, stock in trade, choses in action, or other property and the buyer undertakes to pay the seller's debts, an action by a creditor lies against the buyer on his promise. And this is true even though the creditor who sues may not have been specifically pointed out. . . .

> If one who has contracted to buy property assigns the contract rights to one who expressly assumes payment of

the price, the vendor is a creditor beneficiary and can maintain action for the full price against the assuming assignee. If a leasehold is assigned and the assignee (or sublessee) promises the assignor to pay the rent or to perform other obligations of the assignor to the landlord, the landlord can enforce this promise.

The theory upon which the above examples are based is not explained by Corbin. However, in a one-volume hornbook, *Corbin on Contracts* at 759 (1952), he concludes a discussion of the various theories used to explain the rights of third-party beneficiaries by stating:

> These theories were merely complex rationalizations, used for the purpose of attaining a desired result, a result that is now very generally attained without them and a result that is desirable in many cases to which none of them can readily be applied.

In Arkansas we have cases where privity is of little, if any, importance. One example is *Freer* v. *J.G. Putman Funeral Home*, 195 Ark. 307, 111 S.W.2d 463 (1937). In that case a contract between Dr. Freer and John Finney contained a provision that in the event of Finney's death any balance of an account due to Finney would be paid by Dr. Freer on Finney's funeral expense. After Finney's death, the funeral home sued Dr. Freer for its bill. The court said:

> We are confronted with the argument that formerly the courts held that there must have been some privity or obligation as between Finney and the appellee in order to bind appellant; that none being shown here the appellee is without remedy. We find that formerly under some of the more ancient authorities that proposition might have been deemed as well considered. We prefer, however, to take a different view, which we think is more consonant with absolute justice, as well as in conformity with the contract. That view is supported by a substantial array of authorities to the effect that the more nearly absolute becomes the duty of the defendant to pay, in the same proportion is the power to sue increased. Here there is an absolute duty to pay. It admits of no denial and none is offered. There is the correspondingly increased right to sue.

195 at 311-12. We cite this case only to show that the need for privity can vary. *Freer* was cited in *Howell and Tall Timber Development Corp.* v. *Worth James Construction Co.*, 259 Ark. 627, 535 S.W.2d 826 (1976), where this standard was set:

> It is true, as Tall Timber asserts, the presumption is that parties contract only for themselves and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. . . . In the case at bar, there is substantial evidence that it was the clear intention of the parties to contract for the benefit of appellee and that appellee was a beneficiary of their contract. We have repeatedly held that a contract made for the benefit of a third party is actionable by such third party.

259 Ark. at 629 (citations omitted).

In *Southern Farm Bureau Casualty Ins. Co.* v. *United States*, 395 F.2d 176 (8th Cir. 1968), the court in applying Arkansas law analyzed our cases running from the strong emphasis on privity in *Carolus* v. *Arkansas Light and Power Co., supra*, to the *Freer* case which placed no reliance on that concept. The Eighth Circuit court decided that Arkansas worked on the theory that "where a contract clearly intends a benefit to a third party, privity is not required, and the third party acquires an enforceable right." 395 F.2d at 179. Another hornbook, Calamari & Perillo, *The Law of Contracts* Sec. 17-2 (2nd ed. 1977) suggests this test:

> A key which unlocks many of the cases is the determination of to whom the performance is to be rendered. If the performance is to run directly to the promisee, the third party is ordinarily an unprotected incidental beneficiary, but if it is to run to the third party, he is ordinarily an intended beneficiary with enforceable rights.

*Id.* at 608-09. A footnote cites several cases in support of the text. One case, *Lenz* v. *Chicago & N.W. Ry. Co.*, 86 N.W. 607 (Wis. 1901), states: "Payment direct to the third person is, of course, a benefit to him, and, if that is required by a contract, the intent to so benefit is beyond question." *Id.* at 609.

■ It thus seems that regardless of privity, the general rule

is very close to the rule in *Howell* v. *Worth James Construction Co., supra,* which says "the presumption is that parties contract only for themselves and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." Applying that rule here, we think it beyond question that Hill and Bryan agreed with the Krayeckis, in a contract approved by a court order, that Hill and Bryan would assume the balance due to the appellants. That this provision was clearly for appellants' benefit is proved by the fact that Hill and Bryan made the payments on that balance directly to the appellants and continued to do so for more than six months after the motel burned.

For the reasons stated above, we modify and remand with directions that the appellants' judgment be entered against Hill and Bryan also.

■ Hendrix College argues on a cross-appeal that the trial court erred in refusing to grant treble its damages for rents accrued after the notice to vacate. It relies on Ark. Code Ann. § 18-60-309(b)(2) (1987) which provides that when unlawful detainer is found to apply to commercial property the liquidated damages is three times the rental per month. Ark. Code Ann. § 18-60-304 (1987) provides for a three-day written notice to quit before a person shall be deemed guilty of unlawful detainer. The trial court found that no written three-day demand of a definite time to vacate the premises was ever served on any of the tenants or lessees. Hendrix directs us to a stipulation at page 635 of the transcript, in which counsel for the Antheses stipulated that they had received notice on November 8, 1985, to vacate by November 30, 1985. Hendrix's claim for treble damages is also made against Hill and Bryan. It is not contended that their counsel made any stipulation about receiving notice to vacate. Therefore, there is no evidence that the required notice was served on them. As to the Antheses, we cannot say the chancellor was clearly wrong in not holding them liable for treble damages when we consider that there must be a finding of willful, wrongful holding over before Ark. Code Ann. § 18-60-304 would apply. *See Warmack* v. *Merchants National Bank,* 272 Ark. 166, 612 S.W.2d 733 (1981); *Johnson* v. *Taylor,* 220 Ark. 46, 246 S.W.2d 121 (1952).

■ The court did grant Hendrix judgment for $4,805.68

for taxes it paid that the lessees were obligated to pay. This was a joint and several judgment against all parties who had owned the motel, and were served with valid summons, except Hill and Bryan. Hendrix cross-appeals from the failure to make this judgment run against Hill and Bryan also. We agree with Hendrix. The agreement that Hill and Bryan made with the Krayeckis to retake possession of the motel and assume the indebtedness that the Krayeckis had assumed when they bought the motel surely included the lease obligations to Hendrix. There is evidence that Hill paid Hendrix rent as called for in the lease. The attorney who represented Hill and Bryan in the Faulkner County Circuit Court case in which Hill and Bryan agreed to retake possession of the motel testified that they agreed to assume and discharge the lease obligations. The third-party beneficiary rule which we have applied to make Hill and Bryan liable to the Antheses also makes them liable to Hendrix for the taxes paid by Hendrix.

·Thus, we modify the $4,805.68 judgment for taxes and remand with directions that this judgment for taxes paid be entered against Hill and Bryan also.

■ The trial court also granted joint and several judgment for Hendrix against all the parties who had owned the motel, and were served with summons, for rents due. This judgment ran against Hill and Bryan also. Although Hill and Bryan did not appeal from the judgment entered by the court, they join the appellants, David and Edward Anthes, in arguing that no rent should have been granted beyond August 31, 1985, the end of the lease from Hendrix. The Antheses contend the holding over past the end of the lease was mainly due to the requirement of the federal bankruptcy law that stayed proceedings until it was lifted. Nevertheless, it was not Hendrix College that was in bankruptcy. Appellants and Bryan also think Hendrix moved too slowly in attempting to gain possession, but we think that was for the trial court to decide, and we find no error in that respect.

On their appeal, the Antheses also contend that the trial court erred in not giving them "judgment over" against all subsequent purchasers of the motel for the judgment given Hendrix against the Antheses for the taxes paid by Hendrix and the rent due to Hendrix. Although the Antheses had asked for

that relief in the response they filed to Hendrix's pleading asking for judgment for the taxes and rent, the trial court made no reference to the issue or any finding in that regard. While we hear appeals from chancery *de novo*, we have the discretionary power to remand for further proceedings on the whole case or certain issues. *Ferguson* v. *Green*, 266 Ark. 556, 566, 587 S.W.2d 18 (1979).

We remand for the trial court to make the judgments granted appellants and Hendrix College run against Hill and Bryan also. We also direct the trial court to make a determination, with findings, on appellants' request for "judgment over" on Hendrix's judgment for taxes and rent against appellants.

Affirmed as modified, and remanded for further proceedings consistent with this opinion.

CRACRAFT and ROGERS, JJ., agree.