# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3090

_____

| | | |
|---|---|---|
| Raymond Day; Boren Holtoff; | * | |
| Mike Moreland; Junior Burdan; | * | |
| Pat Roberts; Steve Ross, | * | |
| | * | |
| Plaintiffs/Appellants, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Arkansas. |
| | * | |
| Case Credit Corporation, | * | |
| | * | |
| Defendant/Appellee. | * | |

_____

Submitted: June 23, 2005
Filed: November 7, 2005

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Raymond Day, Boren Holthoff, Mike Moreland, and Steve Ross (farmers)[1] appeal the district court's grant of summary judgment dismissing their claims against Case Credit Corporation (Case) and granting judgment in favor of Case. We affirm in part and reverse in part.

_____

[1]Appellants offer no arguments on behalf of Junior Burdan and Pat Roberts. Therefore, the district court's orders with respect to them are summarily affirmed.

I

The facts, viewed in the light most favorable to the farmers, Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997) (summary judgment standard), show the following. The farmers are former customers of Ron Kaufman, the owner and operator of Southeast Implements, Inc. (Southeast), a Case International Harvester equipment dealership. Between 1996 and 1998, they agreed to purchase or lease various items of farm equipment from Southeast. In each instance, the farmers and Kaufman orally negotiated the terms of the purchases/leases, and Kaufman then prepared written purchase agreements for each transaction, assigning his rights thereunder to Case. Case, in turn, after approving the assignments and agreeing to finance the purchases/leases, paid Kaufman for the equipment and looked to the farmers, as putative debtors, for payment. The written purchase agreements, however, were prepared and assigned without the farmers' knowledge and did not reflect the terms of the oral contracts. For example, most of the oral contracts involved leases of farm equipment, while the written contracts represented them as outright sales. Additionally, Kaufman inflated the purchase/lease prices and forged the farmers' signatures, thereby obtaining thousands of dollars in overpayments from Case. In several instances, Kaufman assigned Case forged purchase agreements purporting to cover equipment the farmers never possessed or agreed to purchase.

In addition to forging purchase contracts, Kaufman forged customer signatures on applications for Case credit cards and shop expense financing accounts. This deception facilitated Kaufman's original fraud by providing a source of funding for repairs and warranty work he agreed to provide as part of the oral contracts. When the farmers brought equipment in for covered repairs or warranty work, Kaufman charged the cost to one of the fraudulent credit cards or shop expense accounts and obtained reimbursement from Case.

Kaufman hid his fraudulent activities by giving Case a dummy mailbox address for the farmers. Monthly statements and other correspondence from Case to the farmers was delivered to the bogus post office box and retrieved by Kaufman. Occasionally, dunning correspondence from Case made it to the farmers, who turned it over to Southeast. In each instance, Kaufman assured them he would look into the matter and the problem appeared to resolve.

Eventually, the scheme foundered. When Case became aware of Kaufman's fraud it sent representatives to meet with the individual farmers. After verifying the farmers were in possession of equipment covered by the forged purchased agreements, the representatives demanded they sign "Account Verification" forms. Each verification form contained a description of the equipment, an account number, and a purchase/lease price based on information lifted from the forged contracts. When the farmers refused to sign because the purchase/lease prices were overstated, they were assured the forms would only be used to confirm possession of the equipment. Later, however, Case attempted to enforce the terms of the forged contracts, relying in part on the Account Verifications. According to the farmers, they offered to meet the terms of their oral agreements with Kaufman, but Case refused, insisting they comply with the fraudulent terms reflected in the forged contracts. The farmers allege Case was fully aware Kaufman had falsified the written purchase agreements and compounded his fraud by using the Account Verifications in an attempt to force their acceptance of the fraudulent terms.

Attempts to resolve the disputes proved fruitless and the farmers filed suit against Case and Southeast in Arkansas state court. The farmers failed to effect service of process on Southeast and the action against Case was later removed to federal district court. In their complaint, the farmers sought declaratory relief, asking the district court to determine the rights and obligations of the parties with respect to the purchases/leases of farm equipment. The farmers also alleged, based on an agency relationship with Kaufman, Case breached the purchase/lease agreements and was

liable for invasion of privacy, fraud, and misrepresentation. Case denied the allegations and counter claimed demanding payment for the amounts due or alternatively for possession of the equipment and any deficiency owing after its sale.

Case moved for partial summary judgment on the issue of agency, arguing Kaufman's wrongful acts could not be imputed because Case's only relationship with him was as an independent financing entity. The district court agreed and granted summary judgment. It further concluded all of the farmers' claims were dependent upon a finding of agency and dismissed their entire complaint with prejudice. Case next moved for summary judgment on its counter claim, arguing the farmers were contractually bound to pay for the equipment. The district court granted summary judgment, finding the farmers orally agreed to purchase/lease equipment from Kaufman and admitted they possessed the equipment which had been financed by Case. Accordingly, the district court reformed the forged purchase agreements to reflect the payment terms agreed to in the oral contracts and enforced them against the farmers. Alternatively, the district court held the farmers were liable under a theory of unjust enrichment for the value of the benefits they had received from using the equipment. Finally, Case moved for summary judgment on damages, arguing the farmers were obligated to pay damages according to the payment terms set forth in the oral agreements with Kaufman. The district court found the payment terms under the oral agreements undisputed and awarded damages equal to the farmers' contractual obligations thereunder.

On appeal, the farmers argue the district court erred by 1) finding there was no agency relationship between Kaufman and Case, 2) dismissing their contract claims, and 3) granting summary judgment to Case based on its contract claims.

## II

This diversity action is governed by Arkansas state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). We review the district court's grant of summary judgment and its application of state law de novo. Lerohl v. Friends of Minn. Sinfonia, 322 F.3d F.3d 486, 488 (8th Cir. 2003); Reimer v. City of Crookston, 326 F.3d 957, 961 (8th Cir. 2003).

## A

The farmers first argue the district court erred when it concluded Kaufman was not acting as Case's agent. We disagree.

In Arkansas, the burden of proving an agency relationship rests with the party asserting its existence. B.J. McAdams, Inc. v. Best Refrigerated Express, Inc., 579 S.W.2d 608, 610 (Ark. 1979). In Evans v. White, 682 S.W.2d 733, 734 (Ark. 1985), the Arkansas Supreme Court held the two essential elements of an agency relationship are 1) an agent must have the authority to act for the principal, and 2) the agent must act on the principal's behalf and be subject to the principal's control. See also Taylor v. Gill, 934 S.W.2d 919, 921 (Ark. 1996) (holding the essential elements of an agency relationship are authorization and control).

The farmers argue Kaufman's wrongful acts should be imputed to Case because he was acting as its agent when he negotiated the oral agreements and when he drafted the forged contracts. To support their argument, the farmers seize upon language in the Retail Financing Agreement between Case and Kaufman authorizing him to collect payments from customers on behalf of Case for equipment it financed. According to the farmers, this limited grant of authority implies Kaufman was authorized to act on Case's behalf generally. We decline the invitation to expand this limited grant of authority beyond its express terms. We note, as did the district court,

the Wholesale Financing Agreement between Case and Kaufman expressly disavows any intent to grant Kaufman such broad authority or to create an agency relationship. Because there is no evidence Kaufman was authorized by Case to enter into contracts on its behalf or that Kaufman's activities were controlled by Case, we affirm the district court's holding.[2]

## B

The farmers next argue the district court erred by granting Case summary judgment on its contract claims. We agree.

Defining the precise contours of Case's contract theory has proven an elusive task, made all the more difficult by its indecision about which contracts it hopes to enforce. Case concedes it was not a party to the oral agreements between the farmers and Kaufman, but argues it is an assignee or third party beneficiary "of the purchase/lease agreements . . . made orally with Southeast which arose from the written retail installment contracts." This argument suggests Case hopes to enforce the oral agreements. Conversely, however, Case argues the district court properly enforced the forged contracts after reforming them to reflect the terms of the oral agreements. We need not resolve this apparent inconsistency. Because Case cannot enforce the forged purchase agreements or oral agreements – or some amalgam of the two – we reject its contract theory of recovery.

First, the forged purchase agreements were void from their inception. See Milum v. House, 91 S.W.2d 611, 611 (Ark. 1936) (holding a forged promissory note "is void; and no rights can be predicated upon it . . . ."); see also Orlosky v. Empire Fin. Sys. Inc., 657 N.Y.S.2d 840, 842 (N.Y. App. Div. 1997) (holding there is no

_____

[2]The farmers also argue Kaufman must have been Case's agent because the district court held Case could enforce the oral contracts between Kaufman and the farmers. We address this issue below.

meeting of the minds when a contract has been forged, rendering it void *ab initio*); Laborers' Pension Fund v. A & C Environ., Inc., 301 F.3d 768, 779-80 (7th Cir. 2002) ("A promisor's signature procured by fraud . . . gives no more effect to a contract than a promisor's signature that has been forged. In either case the contract is void; it has never had any legal effect."). Thus, the district court could no more reform the nonexistent written contracts than Case could seek to enforce them.

Second, Case is not an assignee of any contracts. "[U]nder Arkansas law the elements of an effective assignment are delivery of the subject matter with intent to make an immediate and complete transfer of all right, title, and interest from the assignor to the assignee." Keller v. Bass Pro Shops, Inc., 15 F.3d 122, 125 (8th Cir. 1994) (citing Turner v. Rust, 309 S.W.2d 731, 735 (Ark. 1958); Robinson v. City of Pine Bluff, 276 S.W.2d 419, 421 (Ark. 1955); Jones v. Innkeepers, Inc., 676 S.W.2d 761, 766 (Ark. 1984)). The record is devoid of any evidence demonstrating an intent to assign the oral agreements. Rather, the parties anticipated the orally negotiated terms would be memorialized in written purchase agreements which, following the farmers' approval, would then be assigned to Case. That, however, never happened because Kaufman's attempt to complete the assignments via the forged contracts had no legal effect.

Even assuming Case somehow acceded to Kaufman's rights, "an assignor can assign 'only what he has,' and the assignee's right 'is subject to limitations imposed by the terms of that contract [creating the right] and to defenses which would have been available against the obligee had there been no assignment.'" Am. Trans. Corp. v. Exch. Capital Corp., 129 S.W.3d 312, 316 (Ark. 2003) (quoting Restatement (Second) of Contracts, § 336, Cmt. b (1981)). Here, Kaufman was contractually obligated to prepare written purchase agreements reflecting the terms of the oral agreements. Kaufman breached that obligation when he falsified the written contracts and attempted to defraud the farmers. His breach released the farmers from their obligations. See id. at 316-17 ("As a general rule, the failure of one party to perform

his contractual obligations releases the other party from his obligations."). As Kaufman's purported assignee, Case would have taken the contracts subject to the same breach.

Finally, Case argues it can enforce the agreements as a third party beneficiary. We disagree. "Arkansas work[s] on the theory that 'where a contract clearly intends a benefit to the third party, privity is not required, and the third party acquires an enforceable right." Anthes v. Thompson, 773 S.W.2d 846, 851 (Ark. Ct. App. 1989) (quoting So. Farm Bureau Cas. Ins. Co. v. United States, 395 F.2d 176, 179 (8th Cir. 1968) (analyzing Arkansas law)).

> A key which unlocks many of the [third party beneficiary] cases is the determination of to whom the performance is to be rendered. If the performance is to run directly to the promisee, the third party is ordinarily an unprotected incidental beneficiary, but if it is to run to the third party, he is ordinarily an intended beneficiary with enforceable rights.

Id. (quoting Calamari & Perillo, The Law of Contracts § 17-2, at 608-09 (2d ed. 1977)). "[T]he presumption is that parties contract only for themselves and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." Id. (quoting Howell v. Worth James Const. Co., 535 S.W.2d 826, 828 (Ark. 1976)). We divine no intent on behalf of Kaufman or the farmers to negotiate the lease/purchase agreements for the benefit of Case and conclude it is an unprotected incidental beneficiary with no enforceable rights.

For these reasons, the district court's grant of summary judgment holding the farmers liable under a contract theory of recovery is reversed.

C

Having concluded Case may not recover under its contract theory, we turn to its claim of unjust enrichment. "The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." Sparks Reg'l Med. Ctr. v. Blatt, 935 S.W.2d 304, 317 (Ark. Ct. App. 1996) (citations omitted). The party claiming unjust enrichment must prove another's receipt of "something of value to which he is not entitled and which he should restore. There must be some operative act, intent, or situation to make the enrichment unjust and compensable." Smith v. Whitener, 856 S.W.2d 328, 329 (Ark. Ct. App. 1993). It is not necessary to show the party unjustly enriched committed any wrongdoing – even an innocent party "may be compelled to surrender the fruits to another more deserving party." Id. at 330. Rather, "[i]f one has money belonging to another, which, in equity and good conscience, he ought not to retain, it can be recovered although there is no privity between the parties." Id. Parties seeking to invoke the court's equitable powers, however, must be themselves deserving of equity. "The clean hands maxim bars relief to those guilty of improper conduct in the matter as to which they seek relief." Merchants & Planters Bank & Trust Co. of Arkadelphia v. Massey, 790 S.W.2d 889, 891 (Ark. 1990).

The farmers allege Case intentionally compounded Kaufman's fraud by duping them into signing the Account Verifications and using them in an attempt to enforce the fraudulent contract terms. The district court did not analyze whether these allegations, if proven, should bar equitable relief. See id. ("Equity will not intervene on behalf of [a party] whose conduct . . . has been unconscientious or unjust."). Because the farmers' allegations of misconduct against Case create a genuine issue of material fact as to whether equity should intervene, we reverse and remand. Additionally, we note the farmers' motion to amend their complaint to include these allegations was denied. In light of our remand, we see no reason the district court cannot, upon proper motion, revisit the issue.

## III

The order of the district court granting summary judgment on the issue of agency is affirmed.  The orders of the district court granting summary judgment on the issues of liability and damages are reversed and the case is remanded for further proceedings consistent with this opinion.

_____