# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1223

_____

| | | |
|---|---|---|
| Simmons Foods, Inc.; Simmons Prepared Foods, Inc., | * | |
| | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| H. Mahmood J. Al-Bunnia & Sons Company; Middle East Frozen Foods; | * | Appeal from the United States |
| Middle East Frozen Foods Iraq, LLC; | * | District Court for the |
| National Food Products Development | * | Western District of Arkansas. |
| Company, LTD; International Meat Processing Company; Al Mansour for Salt Production Company, LTD, | * | |
| | * | |
| | * | |
| | * | |
| Defendants - Appellants, | * | |
| | * | |
| The Global Company for Meats, LTD, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: December 15, 2010
Filed: March 10, 2011

_____

Before RILEY, Chief Judge, BEAM and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The district court[1] partially denied a motion to stay proceedings and compel arbitration in this dispute between several companies. Defendants Middle East Frozen Foods, Middle East Frozen Foods Iraq, LLC, and other firms appeal. Having jurisdiction under 9 U.S.C. § 16(a)(1)(A)-(B), this court affirms.

## I.

This case centers on four companies: Simmons Foods, Inc. ("Simmons"); Simmons Prepared Foods, Inc. ("Simmons Prepared"); Middle East Frozen Foods ("MEFF"); and Middle East Frozen Foods Iraq, LLC ("MEFF Iraq").[2] The four cooperated in supplying American-made halal frozen chicken to the Iraqi market. Generally, Simmons and Simmons Prepared were involved in production, while MEFF and MEFF Iraq handled resale. In a 2006 note, MEFF promised to pay $2,479,674.07 to Simmons, the note's holder. In addition to installment payments, the note states (brackets and parentheses in original):

> the outstanding principal balance of this Note shall be reduced by the amount of payments received by Holder from Middle East Frozen Foods [Iraq] ("MEFF Iraq") pursuant to an agreement between Holder and MEFF Iraq that provides for the payment by MEFF Iraq to Holder of $20.00 U.S. per metric ton of poultry products sold by MEFF Iraq.

The record does not contain the referenced agreement on $20-per-ton payments. The note also provides, "Any dispute, controversy or claim arising out of or relating to this

---

[1] The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

[2] MEFF Iraq's brief to this court states that its proper legal name is Middle East Frozen Foods Co., LLC. MEFF Iraq and MEFF played the most active parts in the events leading to this case. The Global Company for Meats, LTD, has never made an appearance (the other defendants claim no knowledge of its existence).

Agreement, or the breach thereof, shall be settled by arbitration . . . ." The only parties to the note were MEFF and Simmons, though MEFF signed by "HMBS" (presumably H. Mahmood J. Al-Bunnia & Sons, apparently an affiliate of MEFF).

Also, Simmons Prepared and MEFF Iraq made a series of consignment contracts providing that "MEFF Iraq will effect payment of all sales proceeds, less agreed fees, to Simmons Prepared Foods Inc, upon sale of product." The contracts require payment into a Simmons bank account, but list Simmons Prepared as the only "Payment Beneficiary." The contracts do not mention arbitration.

MEFF allegedly defaulted on the note. Simmons and Simmons Prepared sued MEFF, MEFF Iraq, and several other entities in Arkansas state court, alleging claims under the note and the contracts. After removal to the district court on alienage grounds, the defendants moved to stay judicial proceedings and compel arbitration. The parties agreed that the dispute with MEFF over the note should proceed in arbitration. The district court granted the motion to that extent. However, it denied the motion as to Simmons Prepared's contract claims against MEFF Iraq. The defendants appeal, or alternatively request a discretionary stay.

## II.

Application of the arbitration clause hinges on contractual interpretation, which this court reviews de novo. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). Denial of an equitable stay is reviewed for abuse of discretion. *City of Bismarck v. Toltz, King, Duvall, Anderson & Assocs., Inc.*, 767 F.2d 429, 432 (8th Cir. 1985).

## A.

The defendants argue that the note's arbitration clause covers the contracts.

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, "A dispute must be submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement." *Lyster*, 239 F.3d at 945 (citations omitted). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. However, a party who has not agreed to arbitrate a dispute cannot be forced to do so." *Id.* (citations and quotation marks omitted).

Simmons Prepared is not a party to the note, or even mentioned in it. Simmons Prepared "has not agreed to arbitrate a dispute [so it] cannot be forced to do so." *Id.* (citations and quotation marks omitted). The defendants assert several theories that would bind Simmons Prepared to the arbitration clause. They allege, "Simmons Prepared acted as Simmons' agent" and "Simmons Prepared is . . . a third-party beneficiary of the Note." They also allege, "The act of Simmons Prepared joining its claims under the Contract with the claims of Simmons under the Note should be construed as ratification of the arbitration agreement." Finally, they contend Simmons Prepared is equitably estopped from avoiding the arbitration clause.

"'[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, thirty-party beneficiary theories, waiver and estoppel[.]'" *Bank of America, N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 912 (8th Cir. 2010), *quoting Arthur Andersen LLP v. Carlisle*, ___ U.S. ___, 129 S. Ct. 1896, 1902 (2009). Arkansas law – which the parties chose to govern both the contracts and the note – determines whether Simmons Prepared must arbitrate. *See Bank of America*, 618 F.3d at 912.

In Arkansas, "the two essential elements of an agency relationship are 1) an agent must have the authority to act for the principal, and 2) the agent must act on the

principal's behalf and be subject to the principal's control." ***Day v. Case Credit Corp.***, 427 F.3d 1148, 1152 (8th Cir. 2005), *citing **Evans v. White***, 682 S.W.2d 733, 734 (Ark. 1985); ***Taylor v. Gill***, 934 S.W.2d 919, 921 (Ark. 1996). While the note says that proceeds from chicken sales shall repay the debt to Simmons, no evidence indicates that these payments actually occurred. Even if they did, the defendants point to no evidence that Simmons Prepared, when entering the contracts, was under Simmons's control or acted on Simmons's behalf. The defendants do point to the routing of contract proceeds through Simmons's bank account. To the extent Simmons handled the money, it was Simmons Prepared's agent. Still, a "principal is not bound by the acts and declarations of an agent beyond the scope of his authority. A person dealing with an agent is bound to ascertain the nature and extent of his authority." ***Columbia Mut. Cas. Ins. Co. v. Ingraham***, 896 S.W.2d 903, 905 (Ark. 1995), *quoting **Dixie Life & Acc. Ins. Co. v. Hamm***, 344 S.W.2d 601, 603 (Ark. 1961). The defendants do not show that Simmons's conduit function included authority to bind Simmons Prepared to arbitration. The defendants also claim Simmons Prepared retained all proceeds, when $20 per ton should have gone to repay the note debt. The record does not reveal whether the proposed $20-per-ton payments were part of, or in addition to, Simmons Prepared's consignment receipts. Regardless, even if Simmons improperly failed to credit $20 per ton against MEFF's note debt, MEFF's complaint runs against Simmons. Simmons Prepared received the sales proceeds by virtue of the contracts, not the note. Simmons Prepared is not bound to arbitrate on agency grounds.

The defendants advance a third-party beneficiary theory. "A contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party." ***Perry v. Baptist Health***, 189 S.W.3d 54, 58 (Ark. 2004) (citations omitted). "'[T]he presumption is that parties contract only for themselves and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties.'" ***Day***, 427 F.3d at 1154, *quoting **Anthes v. Thompson***, 773 S.W.2d 846, 851 (Ark. Ct. App.

1989). The defendants again seize on the note's $20-per-ton payments. Simmons Prepared consigned the chicken for sale. If the sales proceeds instead went to Simmons, Simmons Prepared was a donor – not a beneficiary. The defendants also argue that "Simmons Prepared [is] a third-party beneficiary under the Note, inasmuch as repayment of the Note benefits the entire family of Simmons affiliates." The note's terms benefit only Simmons; the note lists no other beneficiaries; and the defendants present no evidence that the note proceeds were used to the benefit a family of companies.

The defendants claim that Simmons Prepared ratified the arbitration clause by joining Simmons's suit on the note. A principal may ratify an unauthorized act by accepting its benefits. *See Sterne, Agee & Leach, Inc. v. Way*, 270 S.W.3d 369, 376 (Ark. Ct. App. 2007). Court rules – not the note – allow Simmons Prepared to join Simmons's lawsuit. *See* **Ark. R. Civ. P. 20(a)** (permissive joinder); **Fed. R. Civ. P. 20(a)** (same). Simmons Prepared has not claimed any benefit from the note.

The defendants finally argue that because "the claims of Simmons Prepared under the Contract are so intertwined with the claims of Simmons under the Note," equitable estoppel requires Simmons Prepared to arbitrate. Under Arkansas law,

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other's conduct to his detriment.

*Way*, 270 S.W.3d at 374 (citation omitted). The note plainly contains an arbitration clause; the contracts plainly do not. The defendants needed only to review the documents; they have not shown that they lacked access to them.

The district court properly denied the motion.

**B.**

The defendants seek an equitable stay pending arbitration on the note. Since the arbitration clause does not bind Simmons Prepared, this stay is discretionary. *See City of Bismarck*, 767 F.2d at 432. The defendants worry about inconsistent results in the note arbitration and the contract litigation. A district court may enter a stay pending arbitration to ensure consistency. *See Contracting Nw., Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983).

The defendants first requested a discretionary stay at the end of a reply memorandum, and the district court did not rule on it. This court will "not normally consider issues which the district court did not rule upon," and there is "no reason to depart from that rule here."[3] *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 351 F.3d 810, 816 (8th Cir. 2003) (citations omitted).

\* \* \* \* \* \* \*

The order of the district court is affirmed.

_____

_____

[3] In an appropriate case where it would "'facilitate the prompt arbitration that Congress envisaged,'" this court could address arbitration issues that the district court did not reach. *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 395 (8th Cir. 1994), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983). Here, the district court ordered arbitration on the note. The defendants have not shown that a discretionary stay of the contract claims would speed the process. This court declines to consider the discretionary stay issue.